JOSÉ MATOS VELÁZQUEZ, Plaintiff and Appellant, *v.* PROCTOR MANUFACTURING CORP., Defendant and Appellee.

No. R-63-101.      Decided October 9, 1964.

*Ismael Cardona* for appellant. *Baker & Woods* and *Luis F. Quetglas* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Plaintiff-appellant filed a claim for wages in the San Juan Part of the Superior Court pursuant to the procedure established in Act No. 10 of November 14, 1917 (Sp. Sess. Laws, p. 216). He alleged that defendant-appellee operates a lucrative business in Puerto Rico and carries out transactions in interstate commerce, and that it contracted and used the services of plaintiff as "foreman" from January 1954 until September 23, 1961, for a salary which ranged from $65 to $75 a week; that defendant owed him $18,969 for hours worked in excess of 40 hours a week, 8 a day, and on the seventh days which were not paid him. He prayed for judgment for that amount and for a like amount by way of penalty.

Defendant answered and alleged that it had paid in full the compensation to which plaintiff was entitled under the law. It admitted that it was engaged in a lucrative business and that it carried out transactions in interstate commerce, and denied the other averments. Subsequently defendant moved for leave to file an amended answer for the purpose of alleging as affirmative defense that plaintiff was an "executive" and was not therefore covered by the labor laws applicable in this case. Plaintiff objected to the admission of the amended answer, and after the propriety of such amended answer was fully argued orally and by memoranda, the trial court admitted it. The amended answer added to the previous answer the following: "Affirmative Defenses: (1) the complaint does not state facts on which to grant relief to plaintiff; (2) during the period in controversy plaintiff discharged functions of an 'executive,' wherefore he has no right to the relief sought." The case having been

heard on the merits, the trial court dismissed the complaint on the ground that plaintiff was an executive. In his appeal, plaintiff alleges that the trial court erred in granting leave to file the amended answer. We shall consider for the moment this procedural question.

■ ■ The complaint was filed on September 29, 1961. Act No. 10 of November 14, 1917, relied on by plaintiff, governed on that date. This Act was repealed and substituted by Act No. 2 of October 17, 1961 (Sp. Sess. Laws, p. 447), establishing a summary proceeding for cases of claims of workers and employees against their employers. Except for a few variations, this statute followed substantially the procedural pattern of Act No. 10 of 1917, and, like the latter, Act No. 2 of 1961 provides that in cases prosecuted thereunder the Rules of Civil Procedure shall govern insofar as they are not in conflict with the specific provisions of that Act, or with the summary nature of the procedure therein established. Act No. 2 expressly provides that the defendant shall answer in one sole plea in which he shall include all his defenses and objections, it being understood that he waives all defenses and objections not embodied in said plea, which provision did not appear in the former Act No. 10.

Appellant maintains that this provision barred the filing of an amended answer. We believe, as held by the trial court, that it does not. Rule 6.3 of the Rules of Civil Procedure of 1958 provides certain defenses which must be set forth affirmatively in replying to a preceding pleading. If many of the defenses therein enumerated should prosper, it would make unnecessary to litigate the action on the merits. Others would not. Rule 10.2 provides that every defense, in law or in fact, to a claim in any pleading, whether a claim . . . shall be asserted in the responsive pleading thereto. However, before pleading, the party may make, by motion, certain defenses which are enumerated. These defenses to

be made by motion shall not be deemed waived because of the fact that they are joined with the responsive pleading, according to Rule 10.2. According to Rule 10.4, the defenses of Rule 10.2 shall be heard and determined before trial, unless the court orders otherwise.

■ In providing in Act No. 2—the lawmaker being aware of the procedural patterns embodied in those Rules, which would otherwise be applicable to this wage claim if no provisions were made to the contrary—that the defendant shall answer in one sole plea in which he shall include all his defenses and objections, the requirement was that both the affirmative defenses of Rule 6.3 and the defenses enumerated in Rule 10.2, which according to Rule 10.4 shall be heard and determined before trial, as well as any other defense or objection, must be set forth by defendant in an answer embracing everything: his answer on the merits of the case and those defenses, or any defense, in view of the summary nature of the action. The purpose has been to prevent in these wage claims the inevitable delay whenever a defendant is permitted, as in the ordinary rules, to make different defenses and obtain judgment thereon before answering on the merits. The purpose is to join promptly the issue on the merits.[1]

■■ The provision referred to of § 3 of Act No. 2 does not have the effect of preventing that a responsive pleading made as therein provided be amended in a proper case. Rule 13.1 permits amendments to the pleadings, with leave of court in certain cases, and provides that leave shall be freely given when justice so requires. There is no conflict between Rule 13.1, which presupposes pleadings already made, and the provisions of § 3 of Act No. 2 which refer

---

[1] There is no question that the lawmaker is acquainted with the traditional practice of litigating under an ordinary procedure in which the defense of lack of cause of action, whether or not it has merits, is made by separate motion, with the consequent delay.

*to the manner* of pleading differently in this type of judicial actions.

■ Regarding this case in particular, in its responsive pleading made pursuant to § 3 *supra* defendant denied that it owed any amount to plaintiff by way of salaries. As a result of that denial, the issue was joined on the merits on every principle of fact and of law aimed at defeating the claim. As a result of such denial, defendant could have been permitted to show through cross-examination or with evidence that plaintiff performed the work of an executive, in which case he would not have as a question of law any right or cause of action under the labor laws under which he makes claim. The fact that leave was granted to amend the answer in order to expressly allege that plaintiff was an executive, without it being one of those cases in which it is necessary to make an affirmative defense, actually favored plaintiff since prior to the trial he was duly informed of that responsive pleading and was in a better position to support his claim with evidence, or to prepare himself to challenge the evidence in that sense. The trial court did not commit any error of law or of discretion in permitting the amendment to defendant's responsive pleading.

The other contentions made in this appeal challenge the trial court's findings of fact on the basis of the weighing of the evidence. We copy the findings of fact:

"1. That defendant Proctor Manufacturing Corp. operates a lucrative business and carries out transactions in interstate commerce, and used the services of plaintiff from 1954 to September 1961.

"2. That plaintiff started in 1954 to work for defendant as workman at a salary of $65 a week, and on September 18, 1959 he was assigned to work as supervisor in the 'coverage and surplusage' department at a salary of $75 a week, an employment which he held until May 1961 when defendant suspended two supervisors, and plaintiff went back to work as a

workman for three weeks, at the end of which he resumed work as supervisor in the same department and at the same salary of $75 a week until September 23, 1961, when he was dismissed.

"3. That in defendant's plant there are six (6) departments physically separated from each other by sections within the same factory, each department constituting one unit. [Tr. Ev. 236–37.]

"4. That the six departments are the following:
    1. Handle
    2. Reservoir
    3. Thermostat
    4. Coverage and surplusage
    5. Sole plate
    6. Assembly

"That plaintiff was in charge of the supervision of the coverage and surplusage department.

"5. That each one of those departments was in charge of one part of the plates manufactured by defendant.

"6. That in his department plaintiff made recommendations which were acceptable to the agency, and on one occasion he recommended Clemente Rodríguez and Héctor Piñero to Jesús Berríos for work and they were hired.

"7. That plaintiff and the other foremen or supervisors of each department met with defendant's manager and made recommendations, which were acceptable to defendant.

"8. That the system adopted by defendant for the appointment of employees was the following: They were made through the Department of Labor, upon applications made personally, or upon recommendation of the foremen.

"9. That the foremen had authority to switch employees from one department to another.

"10. That whenever a machine went out of order and there was no work for some employees, the foreman had authority to talk with the foreman of another department and place them in his department. That he also had authority, if warranted by the circumstances, to order extra hours of work.

"11. That in his supervisory work the foreman had authority to reject any work which was not well done. The foremen likewise had authority to excuse employees whenever they were sick.

"12. That whenever it was necessary to lay off personnel for reasons of economy, the foremen selected those who should stay, and on one occasion an employee by the name of Aquino was not on the list of those to be dropped and plaintiff said that he needed him, his recommendation was accepted, and he stayed.

"13. That plaintiff had authority to dismiss employees of his department, and on one occasion he saw a laborer surnamed Berríos sleeping in the men's room and fired him, and his action was indorsed by defendant.

"14. That the management met with all the foremen to discuss factory problems.

"15. That plaintiff as well as the other foremen were required to prepare a daily written report of the work performed, and bring to the manager's attention any problem which could arise.

"16. That the foreman was required to prepare a report on the employee's absence from work, and that every time an employee absented himself the foreman warned him, and if an employee was warned three times during a period of 90 days, the foreman recommended his dismissal and his recommendation was immediately accepted.

"17. That plaintiff received instructions from the management on the production which his department was required to put out, otherwise the foreman had authority to order that extra hours be worked. That if the work could be done in less than eight hours, or if the machinery went out of order, plaintiff also had authority to lay off the employees.

"18. That plaintiff was paid the hours in excess of eight a day during the time he worked as a workman, but he was not paid for the three extra hours a day which he also worked during the time he was supervisor from September 1959 to September 1961. That plaintiff did not punch time cards while he worked as supervisor.

"19. That in the selection of personnel for his department, it was appellant's duty to test and train them and to make his recommendation as to whether or not they should continue working, which defendant forthwith accepted.

"20. That plaintiff absented himself from work frequently, and on one occasion he was absent one week and was paid his weekly pay.

"21. That there was always an average of 15 to 40 men working in his department under his orders and supervision.

"22. That 100 per cent of plaintiff's work consisted in supervising the workers under his direction and training the new employees. See plaintiff's deposition, p. 40 of exhibit 15 of defendant."

In the light of the facts found proved, the trial court dismissed the claim in concluding that in accordance with the applicable federal laws and regulations and the laws and regulations of the Commonwealth, plaintiff was an executive from the time of his appointment as supervisor on September 18, 1959 until he ceased in his employment on September 23, 1961. The trial court concluded that plaintiff was paid in full any other salary to which he was entitled before holding the position of supervisor. That conclusion is not in issue.

■ The Minimum Wage Act, No. 8 of April 5, 1941 (Sess. Laws, p. 302); Act No. 289 of April 9, 1946 (Sess. Laws, p. 682), fixing one day of rest for each six working days; No. 379 of May 15, 1948 (Sess. Laws, p. 1254), establishing the working day in Puerto Rico and providing for payment of double time for hours worked in excess of the working day, as amended, and the new Minimum Wage Act, No. 96 of June 26, 1956 (Sess. Laws, p. 622), have excluded from their provisions and coverage the managers, executives, and professionals, as these terms have been defined by regulation of the Minimum Wage Board. On the other hand, § 13(a) of the Federal Fair Labor Standards Act, 52 Stat. 1067, excludes from the provisions of §§ 6 and 7, establishing a minimum wage and maximum work hours, a person employed in a bona fide executive, administrative, or professional capacity, as such terms are defined by regulations of the Administrator. 29 U.S.C.A. §§ 206, 207, 213(a).

■ The Federal Administrator has described an employee employed in a bona fide executive capacity as one (1) whose primary duty consists in the management of the enterprise in which he is employed, or of a customarily recognized department or subdivision thereof; and (2) who customarily and regularly directs the work of two or more employees of the enterprise, or of a department or subdivision thereof; and (3) who has authority to hire or fire other employees, or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and (4) who customarily and regularly exercises discretionary powers; and (5) who does not devote more than 20 per cent of his hours of work in the work week to activities which are not directly or closely related to the performance of the work described in paragraphs (1) through (4); . . . and (6) who is compensated for his services on a salary basis at a rate of not less than $55 per week (or $30 per week if employed in Puerto Rico or the Virgin Islands) [$100 per week or $75 per week if employed in Puerto Rico, the Virgin Islands, or American Samoa], exclusive of board, lodging, or other facilities, Provided; . . . Code of Federal Regulations, 29 U.S.C.A., App. § 541.1, and Ann. Supp. 1963.[2]

■ According to the facts found proved, the trial court determined that plaintiff, as supervisor with a salary

---

[2] The work of an employee who is considered an executive for the purposes of the labor laws which exclude him from their provisions has been substantially described in the local regulation in the same manner as in the federal regulation. See the regulation in force since January 15, 1960, 29 R.&R.P.R. § 246e–8. It does not apply to executive, administrative, and professional employees whose services are covered by the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–19. The former local regulation, No. 13 of August 8, 1951, is copied in some of our decisions. *Morales* v. *Superior Court,* 84 P.R.R. 119, 126 (1961); *Piñán* v. *Mayagüez Sugar Co., Inc.,* 84 P.R.R. 86, 90 (1961); *Sierra* v. *Mario Mercado e Hijos,* 81 P.R.R. 305 (1959).

of $75 per week, performed the work of an executive pursuant to all the regulatory requirements applicable in his case. From a study of the record we are convinced that the findings of fact of the trial court whereby plaintiff is an executive, as a question of law, pursuant to the aforementioned regulations, are substantially supported by the evidence, and in the weighing thereof they represent a rational and fair balance. It having been established that plaintiff was an executive, he has no cause of action in law to claim extra hours worked, even though he worked them, as concluded by the court, nor for work performed on the day of rest.

The judgment rendered in this case dismissing the complaint will be affirmed.